RANDY L. DRYER (0924)
BRANDON J. MARK (10439)
SCOTT S. BELL (10184)
Parsons Behle & Latimer
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

BENNET KELLEY (pro hac vice pending)
INTERNET LAW CENTER
100 Wilshire Blvd., Suite 950
Santa Monica, CA 90401
Telephone: (310) 452-0401
Facsimile: (702) 924-8740

*Attorneys for Envoy Media Group, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ZOOBUH, INC., a Utah corporation<br><br>   Plaintiff,<br><br>vs.<br><br>BETTER BROADCASTING, LLC., a Utah limited liability company; IONO INTERACTIVE, a company doing business in Utah; ENVOY MEDIA, INC., a California Corporation; DOES 1-40<br><br>   Defendants. | **DEFENDANT ENVOY MEDIA GROUP, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER FRCP 12(b)(1), 12(b)(6), AND 12(e)**<br><br>Case No.  2:11-cv-00516-DB<br><br>Judge Dee Benson |

Defendant Envoy Media Group, Inc. ("EMG"), by and through counsel of record, submits this Memorandum in Support of its Motion to Dismiss the Complaint under Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject-matter

jurisdiction and/or failure to state a claim or, in the alternative, requiring under Rule 12(e) that Plaintiff amend its Complaint in order that it provide fair notice of the allegations and claims being made against EMG.

## INTRODUCTION

When Congress passed The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 et. seq. ("CAN-SPAM Act"), it narrowly prescribed the private of action to only Internet access service providers meeting certain requirements. As set forth herein, Zoobuh does not meet the threshold set by Congress to initiate a claim under the CAN-SPAM Act and, as such, the Complaint must be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure since this Court lacks jurisdiction over such a claim and Plaintiff has failed to state a clam upon which relief may be granted. Alternatively, to the extent that Plaintiff has asserted cognizable claims, the Court should order that Plaintiff provide a more definite statement of its claim pursuant to Rule 12(e) since it has failed to plead its allegations in a way so as to reasonably enable EMG to respond.

## ARGUMENT

I. **ZOOBUH LACKS STANDING UNDER THE CAN-SPAM ACT**

    A. **A Plaintiff Must Have Standing to Confer Subject-Matter Jurisdiction on this Court.**

"Article III, Section 2 of the United States Constitution extends the judicial power only to 'Cases' or 'Controversies.' A dispute is an Article III 'Case' or 'Controversy' only if the plaintiff can establish what is known as 'constitutional standing.'" *Robey v. Shapiro, Marianos & Cejda, LLC*, 434 F.3d 1208 (10th Cir. 2006) (internal quotation marks omitted); *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 64 (1997) ("Standing to sue or defend is an aspect of the case-or-controversy requirement."). "Standing [under Article III] is, of course, a threshold issue

2

in every case before a federal court." *Hutchinson v. Pfeil*, 211 F.3d 515, 523 (10th Cir. 2000) (alteration and emphasis by court; internal quotation marks omitted).

"'The question of standing involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Utah v. Babbitt*, 137 F.3d 1193, 1201 (10th Cir. 1998) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). Indeed, standing is an important constitutional limitation "'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Babbitt*, 137 F.3d at 1201 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

"'[The elements of constitutional standing] are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.'" *Babbitt*, 137 F.3d at 1204 (alterations by court) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). As a consequence, the plaintiff "bears the burden of proof" to establish it has standing. *Babbitt*, 137 F.3d at 1204 (citing *Defenders of Wildlife*, 504 U.S. at 561); *Kerr v. Vince*, No. 07-30021, 2010 WL 1416511, at *9 (D. Mass. April 1, 2010) ("The burden of proving standing rests on the party seeking to invoke this court's jurisdiction." (citing *Warth v. Seldin*, 422 U.S. 490 (1975))).

### B. The Act Confer Standing Only on Bona Fide Internet Access Service Providers.

The CAN-SPAM Act regulates the sending of commercial email in the United States. The CAN-SPAM Act's title is somewhat of a misnomer since, in passing the law, Congress was explicit that its purpose was to protect and regulate, rather than ban or "can," unsolicited commercial email, more commonly known as "spam."[1]

---

[1] Senator Wyden, who co-authored the CAN-SPAM Act, explained that the legislation struck a careful balance between a marketer's First Amendment rights and the interest of consumers, which essentially "says that if you want

The CAN-SPAM Act also limits private rights of action to a "provider of Internet access service adversely affected by a violation" of the Act. *Id.* § 7706(g). The legislative history makes clear that Congress intended to provide "a limited right of action by bona fide Internet service providers adversely affected by a violation." 150 Cong. Rec. E72 (Statement of Rep. Dingell).

As the Ninth Circuit Court of Appeals explained, Congress intended to limit CAN-SPAM Act enforcement actions "to those best suited to detect, investigate, and, if appropriate, prosecute violations" and expressed a "legitimate concern that the private right of action be circumscribed and confined to a narrow group of private plaintiffs" and not those enticed by "the siren song of substantial statutory damages." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1050 (9th Cir. 2009).

C. **Zoobuh Fails to Allege Harm Attributable to Violations of the Act.**

Plaintiff Zoobuh, Inc. ("Zoobuh"), asserts five causes of action under the CAN-SPAM Act and a sixth nebulous claim for "Alter Ego," against EMG. The Complaint alleges that Zoobuh provides "email services for private parties to access email" and was therefore an Internet access service provider ("IASP") under the CAN-SPAM Act. (Complaint ¶ 9.) Zoobuh further alleges that that:

---

to send unsolicited marketing e-mail, you've got to play by a set of rules." 149 Cong. Rec. S. 5,208 (2003) (statement of Sen. Wyden).

Maintaining this balance was important to the Congress, since as Senator Leahy emphasized:

> Congress must exercise great caution when regulating in cyberspace. . . . [W]e must not forget that spam, like more traditional forms of commercial speech, is protected by the First Amendment.

149 Cong. Rec. S. 13,042 (2003).

4

> As a result of Email messages that violate CAN-SPAM (commonly called "Spam"), including the receipt of Emails at issue here, Zoobuh has suffered harm including the following: has had to upgrade server capacity, has had to create custom SPAM filtering software, has had to dedicate additional man hours to dealing with SPAM related issues, has received customer complaints, has lost customers, and has experienced server spikes, slowdowns and crashes inhibiting Zoobuh's ability to fulfill its contractual obligations with its customers.

(*Id.* ¶ 22.)

The Complaint engages in a sleight of hand by trying to conflate the definition of spam, which is defined as "unsolicited usually commercial e-mail sent to a large number of addresses," with that of emails that violate the CAN-SPAM Act itself. The two are very distinct under the Act, but Zoobuh has merged them because the harms it alleges are those attributable merely to spam in general.

The law is clear, however, that "[t]he mere cost of carrying SPAM emails over Plaintiff's facilities does not constitute a harm as required by the statute." *Asis Internet Servs. v. Azoogle.com, Inc.*, ;357 Fed. Appx. 112, 113 (9th Cir. 2009). To have standing, a plaintiff must show "at bare minimum, [that there is] a demonstrated relationship between purported harms and the type of e-mail practices regulated by the Act." *Gordon*, 575 F.3d at 1054.

Zoobuh does not do this; instead, it alleges harm attributable to spam in general, citing filtering and other common internet service provider expenditures. These type of expenditures are simply part of the normal operation of an IASP and are not the type of harm the statute was intended to reach. *Gordon*, 575 F.3d at 1053 (IASP expected to "secure adequate bandwidth and storage capacity and take reasonable precautions, such as implementing spam filters, as part of its normal operations.").

Accordingly, Plaintiff' has failed to allege sufficient facts to demonstrate that it has standing under the CAN-SPAM Act and its Complaint must be dismissed accordingly.

## II. THERE IS NO SEPARATE CLAIM FOR "ALTER EGO"

Zoobuh's Cause of Action for "Alter Ego" is not a recognized cause of action but merely a theory of recovery. *See Peacock v Thomas*, 516 U.S. 349, 357 (1996); *Gallagher v. McClure Bintliff*, 740 S.W.2d 118, 119 (Tex.App.1987) ("An attempt to pierce the corporate veil, in and of itself, is not a cause of action but rather is a means of imposing liability on an underlying cause of action such as a tort or a breach of contract."); 1 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 41.10 (2011) ("the alter ego theory is not in itself a claim for substantive relief, but rather is procedural"). As a result, this claim must be dismissed with the other CAN-SPAM causes of action.

## III. THE COMPLAINT IS TOO CRYPTIC TO ENABLE EMG TO ADEQUATELY RESPOND

The deficiencies in Zoobuh's Complaint are not limited to its standing allegations. The CAN-SPAM Act rejects imposing strict liability on advertisers for the acts of downstream marketers and instead imposes liability only where such parties have "actual knowledge, or by consciously avoiding knowing, whether such person is engaging, or will engage, in a pattern or practice that violates" the Act. 15 U.S.C. § 7706(g)(2). Zoobuh's Complaint states no facts demonstrating that EMG had any sort of knowledge (actual or constructive) but instead merely relies on conclusory assertions restating the statutory language.[2] The same is true with respect to

---

[2] "On information and belief, [EMG] procured the emails in question because it either knew that the Marketers whom it hired to email market on its behalf would and/or did violate CAN-SPAM or because it 'consciously avoided' knowing that is markets would and/or did violate CAN-SPAM." (Complaint at ¶ 17.)

the emails themselves, as Zoobuh provides little to no detail about the content other than conclusory statements mimicking the CAN-SPAM language.

However, conclusory allegations no longer suffice in federal court. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). *Iqbal* instructs trial courts to first identify, and then disregard, any conclusory allegations in a complaint that are unaccompanied by supporting factual allegations. 129 S. Ct. at 1950 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Ignoring all such conclusory allegations, the court then "determine[s] whether [the remaining creditable factual allegations] plausibly give rise to an entitlement to relief." *Id.* Where a defendant's knowledge is a key element of a claim, courts "have often dismissed such claims where the allegations of the defendant's knowledge are so factually deficient as to be conclusory." *Tucker v. Bernzomatic*, No. 09-05881, 2010 WL 1838704, at *4 (E.D. Pa. May 4, 2010). It is not enough to merely guess that the defendant "knew of" the key information, a plaintiff must "also [allege] how the defendants knew of such" information. *Id.*

In a similar case, a court granted a motion for more definite statement requiring that the plaintiff provide more detail on its CAN-SPAM claims in order to address the conclusory pleadings and prevent it from becoming a moving target. *Gordon v. Ascentive*, Case 2:05-cv-05079-FV, 2007 WL 1795334, at *5–6 (E.D. Wash. June 19, 2007). In *Asis Internet v. Consumerbargaingiveaways, LLC*, similar conclusory allegations were found to be insufficient

to meet the pleading requirements under Rule 9(b) for claims alleging fraud. 622 F. Supp. 2d 935, 945 (N.D. Cal. 2009) (the court explained that while Plaintiffs identified the number of emails and the time frame involved, "beyond that it provides only general allegations and a few examples of the allegedly misleading advertisements,"). The Complaint in this action is no different, for example Plaintiff's Second Cause of Action simply restates the statutory language into an allegation by stating, without elaboration, that "many of the emails in question contain a subject line that is likely to mislead the recipient as to a material fact regarding the contents or subject matter of the message."

In addition, in *Blue Rhino Corp. v. White Rose Propane, LLC*, the court faced a similar statutory scheme requiring "actual knowledge" before liability could be established and also ordered a more definite statement of the complaint on that issue in order to permit a proper response. *Blue Rhino Corp. v. White Rose Propane, LLC*, Case No. 2:02-CV-1165 TS, Slip. Op. at *6 (D. Utah Nov. 19, 2003).

In this case, Zoobuh must be required to amend its Complaint to allege specific facts as to the basis of EMC's liability, including details about how the emails at issue trigger liability in general and specifically as to how EMG and/or its alter egos are liable as a result.

## CONCLUSION

For the foregoing reasons and such other matters as may be presented in connection with the hearing on this matter, EMG's Motion to Dismiss or, in the alternative, for a more definite statement should be granted.

DATED this 14th day of October 2011.

/s/ Brandon J. Mark
BRANDON J. MARK
PARSONS BEHLE & LATIMER

BENNET G. KELLEY
INTERNET LAW CENTER

*Attorneys for Envoy Media Group, Inc*.

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October 2011, I electronically filed the foregoing **DEFENDANT ENVOY MEDIA GROUP, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER FRCP 12(b)(1), 12(b)(6), AND 12(e)**, with the Clerk of the Court using the CM/ECF e-filing system, which sent notice to the following CM/ECF registrants:

**Jordan K. Cameron:** jcameron@hjslaw.com

**Evan A. Schmutz:** easchmutz@hjslaw.com

/s/ Brandon J. Mark