IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION


| | |
|---|---|
| In re: | ) |
| | ) |
| ZOOBUH, a Utah | ) |
| Corporation, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 2:11-CV-00516DN |
| | ) |
| BETTER BROADCASTING a | ) |
| Utah limited liability | ) |
| company, et al, | ) |
| | ) |
|       Defendants. | ) |
| | ) |
| _____ | ) |


BEFORE THE HONORABLE BROOKE C. WELLS

March 30, 2016


Motion to Quash Subpoena


Laura W. Robinson, RPR, FCRR, CSR, CP
351 South West Temple
8.430 U.S. Courthouse
Salt Lake City, Utah 84101
(801)328-4800

**Appearances of Counsel:**

For the Plaintiff:        Chris L. Schmutz
                                  Attorney at Law
                                  Schmutz & Mohlman
                                  533 West 2600 South
                                  Suite 200
                                  Bountiful, Utah 84010

For the Defendants:      Kasey L. Wright
                                  Attorney at Law
                                  Hansen Wright Eddy & Haws
                                  233 S. Pleasant Grove Blvd
                                  Suite 202
                                  Pleasant Grove, Utah  84062

1              **Salt Lake City, Utah, March 30, 2016**

2                          **\* \* \* \* \***

3          THE COURT:  -- referred to me. This is ZooBuh versus

4      Better Broadcasting, et al.  May I ask counsel to make their

5      appearances and anyone who is not counsel to be identified.

6          MR. SCHMUTZ:  Chris Schmutz, Your Honor, on behalf of

7      ZooBuh.

8          THE COURT:  Mr. Schmutz.

9          MR. WRIGHT:  Your Honor, Kasey Wright appearing on

10     behalf of Blair Jackson and Invictus Law.  And Mr. Jackson

11     is here.  And then Bill Knowlton representing Invictus Law.

12         THE COURT:  All right.  Thank you, gentlemen.  This is

13     your motion to quash the subpoena.  I have read all of the

14     submissions and believe I have an understanding of the

15     underlying concerns.  So feel free to say whatever you wish

16     in the argument.

17         MR. WRIGHT:  Thank you.  I know you have read the

18     pleadings, Your Honor, but just reviewing the information.

19     I am talking too loud for this.

20         THE COURT:  Um, we never know in this courtroom.  Go

21     ahead.

22         MR. WRIGHT:  I apologize if it echoes.  Plaintiff is

23     seeking information for ten entities, two of which, only two

24     of which, are actually parties to the case that he is

25     involved with.  But the bigger issue involving my clients,

1    of course, who are nonparties, is that he is seeking

2    information from Mr. Jackson and from Invictus Law that

3    seeks to force through subpoena my clients to violate, um,

4    the rules of ethics for attorneys.  And for all practical

5    purposes, what he is trying to do is eviscerate the rules of

6    attorney/client privilege that are so crucial to our

7    judicial system.

8         For five years, Your Honor, the plaintiff has been

9    involved in this case and apparently has sat on its hands in

10   regards to conducting any type of discovery.  And that is

11   their choice.  We don't care one way or the other what they

12   do along that line.  But now it seems like they're trying to

13   make up for lost time by seeking information from my client

14   which is clearly protected under the rules of ethics.

15        Since you have read, Your Honor, I will drop down to

16   three reasons why this is clearly protected.  But the most

17   and I think the most important is under Rule 1.6 of the Utah

18   Rules of Professional Conduct.  In quoting from that it

19   states, "a lawyer shall not," a lawyer shall not, "reveal

20   information relating to the representation of a client

21   unless the client gives informed consent."  That's it.

22   Period.  A lawyer shall not and doesn't have the right to

23   disclose that information.

24        Now, there is information -- there are exceptions as

25   you go further down that rule.  However, if you look down

1       those -- on those exceptions, those exceptions are the

2       attorney's right, not a third-party's right, to come in.

3       Rule 1.6(b) states that "the lawyer may reveal information

4       to the extent the lawyer reasonably believes" and then it

5       goes and identifies the information.  It does not give that

6       right to third parties if third parties reasonably believe.

7       It is the attorney's right to prevent a crime, to prevent a

8       fraud, all of those entities, but it is not third parties

9       rights to jump in and make that decision.

10      And Rule 1.6 is clear that it doesn't just apply to

11      attorney/client privilege information, it applies to all

12      information that is given to the attorney.  In Comment 3 of

13      that rule it states, "the confidentiality rule, for example,

14      applies not only to matters communicated in confidence by

15      the client, but also to all information relating to the

16      representation whatever its source."

17      And this is, I think, reviewing the pleadings Your

18      Honor what I want to focus on.  Plaintiffs counsel in his

19      pleadings indicates, well, this is -- there is an -- in one

20      of the comments it talks about that this doesn't apply to

21      things, that 1.6 only applies to issues not relating to

22      force of law.  He seems to imply that that means that 1.6

23      provides less protection than is provided in the

24      attorney/client privilege and the work product doctrine.

25      And the exact opposite is true, Your Honor.  1.6 is made to

1    provide additional protection for us in saying that this

2    information simply does not go out.  I'll give an example of

3    that.  In the opinion that was given in '97 opinion from the

4    Bar 9702, that case involved a criminal and the defendant

5    who had committed a crime who was on the run.  He had

6    contacted his attorney and stated I want to, um, I want to

7    turn myself in.  The attorney says okay, I'll work with you

8    on that, give me your phone number and your information.

9    And the defendant does that.  And the attorney contacts the

10   police, says we're going to work on this.  Then the

11   defendant loses contact with his attorney, doesn't follow

12   through.  The law enforcement goes to the attorney and says

13   we want that information and the attorney says I can't give

14   it out, that's protected.  And even under threat of bringing

15   criminal charges against the attorney, he says I can't give

16   those up.  So we are talking about force of law.  And this

17   makes my point that force of law, that law enforcement

18   clearly could have issued an investigative subpoena, maybe

19   did, maybe issued a warrant, all those things, but those did

20   not say okay, if you take those types of discovery steps

21   then you are no longer bound by this Rule 1.6 of

22   confidentiality.  No the opinion is no, the attorney can't

23   give that information out.  Even if it means after him being

24   a defendant who is on the loose or, and I'll take that, even

25   if it means that somebody that has committed a crime, stolen

1    a million dollars, committed a fraud, whatever the instance

2    is that does not break the rule of 1.6 which is that an

3    attorney shall not, shall not disclose this information,

4    unless the attorney reasonably believes.

5         So I believe that this matter is shut open and closed

6    with 1.6 alone or 1.9.  Now I want to point out that at this

7    point my clients have not indicated one way or the other

8    whether they did represent the parties or they did not.  And

9    it would be a violation for them in fact to do so at this

10   point.

11        And if the subpoena, and it were to become the

12   standard practice of parties to issue subpoenas to attorneys

13   to gain information in collection matters, it would have

14   extremely detrimental effect on the attorney/client

15   relationship which is designed to be protected through our

16   judicial system.  In fact, it would have a chilling effect

17   because now all of a sudden attorneys are worried about

18   whether information they gather, how do they gather it, how

19   do they keep it, do they immediately destroy their file

20   after a case because they don't want it coming back, and

21   then clients, on the other hand, they're saying well I'm not

22   going to give you this information even though it will help

23   you in the representation of me because I don't want that to

24   be subject to subpoena later on.

25        So what plaintiff is trying to do is first of all it

1    is unprecedented.  In all of the years I have been doing

2    this I have never heard of trying to get information from an

3    attorney, and I think that is first and foremost because of

4    the confidentiality.  But also, imagine that all of a sudden

5    attorneys would become the first source of information in a

6    collection matter or any other type of matter.  If I had

7    represented a client in a divorce, and now all of a sudden

8    there are creditors that say I want all of the information

9    and I am going to subpoena you attorney, it just puts

10   unreasonable duties on attorneys and really, really chills

11   that relationship which is completely contrary to our

12   justice system.

13        THE COURT:  Let me ask this question, and this is for

14   both parties, did any party seek any sort of ethics advisory

15   opinion from the bar as it relates to this specific set of

16   facts?

17        MR. WRIGHT:  We did not.  We looked at the advisory

18   opinions.

19        THE COURT:  Okay.

20        MR. SCHMUTZ:  No.

21        THE COURT:  All right.

22        MR. WRIGHT:  Um, dropping down, Your Honor, and as I

23   said I think that 1.6 on confidentiality discloses this.

24   Now I'm going touch briefly upon attorney/client privilege

25   and work product.  Now these really are difficult to even

1       defend at this point because we're not saying whether we

2       have represented them or not, but just as general process

3       and how it goes against it, first of all, and it was pointed

4       out correctly by plaintiff's counsel in his brief that yes

5       because this was a default judgment he doesn't have to give

6       the parties notice necessarily of the subpoena.  But what it

7       does bring is that the attorney/client privilege

8       relationship that exists and right of those parties, they do

9       have a right to exercise that.  They haven't been notified.

10      So even if that privilege does exist, they should be here to

11      exercise that privilege and have that right before any

12      information is disclosed.  Similarly, my clients, as

13      attorneys, also have that right which they would invoke.  At

14      this point, we can't even invoke it to a great extent

15      because we're not saying it even existed.  It's an odd

16      situation.  And the same applies with work product.  But I

17      did want to cite some language from a case which I think

18      furthers the point of the importance of this confidentiality

19      and attorneys being able to work freely and openly with

20      their own clients and gather information.  And it states,

21      "the attorney work product doctrine shelters the mental

22      processes of the attorney providing a privileged area within

23      which he can analyze and prepare his clients" dropping down,

24      it states, "it is essential that a lawyer work with some

25      degree of privacy free from unnecessary intrusion by

1    opposing parties and their counsel."  And I think that that

2    is important to bring out is that not only is it free from

3    opposing party and their counsel, but future opposing

4    parties who may later come back and seek this information as

5    we're seeing here.  We don't want, again, attorneys limiting

6    what they put down in paper, or clients wondering what they

7    provided their client because they're afraid that at a later

8    date it is going to be subpoenaed by an attorney.

9         Last, let me drop back to which I think is still

10   important but is not nearly the importance to our judicial

11   system at large as the first two issues I have referenced,

12   but also is still important and that is, I think, that the

13   subpoena violates Rule 26 and 45 of the Rules of Federal

14   Procedure in that it's not proportional and it puts a burden

15   on my client.  Because as I stated, now all of a sudden

16   attorneys become the first source of information.  We're

17   being required to go through our files, to go back and

18   not -- and it's worse for an attorney, because we just don't

19   go and pop your file because now we have got to go ahead and

20   start making distinctions what's work product, what's

21   attorney/client privilege, spending all of the time and

22   resources when really there is easier ways to get that

23   information.  There is information that could be other

24   entities that can be subpoenaed that that has it more

25   readily available and does not put the strain on the

1    judicial system as this subpoena to us does.

2          Now based on recent filings, um, by plaintiff in this

3    case, indicates that they're going try to focus and say hey

4    there is a fraud that is occurring here and so this is what

5    we need to take this extreme step.  There is no exception

6    for that in the law, Your Honor.  There is no exception for

7    the overburdening or whatever plaintiff thinks my client did

8    or did not do, or when I say my client, these parties who

9    may or may not be our clients, it's really irrelevant

10   because that information, as I gave the example of the

11   criminal matter, it's the attorney/client privilege, it's

12   the burden it puts on attorneys as to why this most -- this

13   subpoena needs to be quashed to protect that.  And plaintiff

14   can go through traditional sources of trying to collect this

15   information and collect this debt.

16         Your Honor, finally, we would ask that in light of, as

17   I said, the unprecedented step I believe that plaintiff is

18   taking in this case, forcing my client to retain an

19   attorney, to prepare to quash a subpoena, we would ask that

20   pursuant to the Rules of Federal Procedure that we be

21   awarded our attorney's fees and filing this motion to quash

22   in defending against this subpoena.

23         Any questions, Your Honor?

24         THE COURT:  No, thank you.

25         Counselor?

1        MR. SCHMUTZ:  Your Honor, I believe that my esteemed

2   opponent is overlooking the clear demarcation between Rule

3   1.6 and the attorney/client privilege that's set forth in

4   Comment 3 to Rule 1.6.

5        Comment 3 says, I won't read the whole thing, it does

6   say, "The attorney/client privilege and work product

7   doctrine apply in judicial," which this is, "or other

8   proceedings in which a lawyer may be called as a witness, or

9   otherwise required to produce evidence concerning a client."

10  That's exactly what's going on here.  This is a situation

11  where an attorney and a law firm are being asked, in a

12  judicial proceeding, and required by subpoena, to produce

13  evidence concerning potentially a client.

14       Then it goes on to say, "the rule of client lawyer

15  confidentiality," that is Rule 1.6 cited by my opponent,

16  "applies in situations other than those where evidence is

17  sought from a lawyer through compulsion of law."  So this

18  language in Comment 3 clearly establishes that what we have

19  here are two separate tracks, separate parallel tracks.

20  Different rules apply in each one.  In the situation where a

21  lawyer is not subject to the process of law through

22  subpoena, through being questioned on the witness stand,

23  through being asked by subpoena to appear and give evidence,

24  then Rule 1.6 applies.  So attorneys can't voluntarily and

25  for their own benefit provide information about their

1    clients to others.  But in a situation like this one where a

2    subpoena has been issued, a judgment needs to be collected,

3    then they have information relevant to the assets and

4    relationships that could lead to collection about judgment,

5    then Rule 1.6 does not apply.  Instead, attorney/client

6    privilege, the case law, the rules of evidence relating to

7    attorneys as witnesses kicks in.  It applies exclusively and

8    Rule 1.6 doesn't govern it.  And I would ask the court to

9    consider the simple fact that if my interpretation of

10   Comment 3 were not right, if Comment 3 were not there, there

11   wouldn't be a need for attorney/client privilege because the

12   confidentiality rules in 1.6 are obviously broader than the

13   protection afforded under the attorney/client privilege.

14   Attorney/client privilege wouldn't even be needed nor would

15   work product doctrine since if that were true, the attorneys

16   could never be asked through subpoena to attend in court to

17   answer questions under oath, and there wouldn't need be to

18   an attorney/client privilege rule.

19       I would reference the court to the case law that makes

20   it clear that Rule 1.6 does not apply.  In this district

21   Judge Boyce issued the *Lifewise* opinion.  In that opinion he

22   talked about the types of -- of information and documents

23   that can be obtained from attorneys.  And he talked about

24   the limitations of attorney/client privilege which are quite

25   a bit more stringent and less expansive in protecting

1     information than Rule 1.6 is.

2          We look at other cases.  *Freebird, Inc.* from the

3     Kansas Court of Appeals, the *Gold Standard* case right here

4     in Utah, *Jackson*, another Utah case, um, *McCoo versus*

5     *Denny's,* which is a Federal District Court of Kansas case,

6     and the *Mountain Dudes* case that talks about information

7     that can be obtained as well as *in re:  Walsh*, a Seventh

8     Circuit case from 1980.  Those cases clearly demarcate that

9     when an attorney is subpoenaed to provide information a lot

10    of the information relating to the factual -- the facts of

11    client/attorney relationships are not protected.  Whether a

12    person is a client is not protected by the attorney/client

13    privilege.  Whether a person met with an attorney at a

14    particular time is not protected.  Other things aren't

15    protected.

16         THE COURT:  But that somebody may have met with a

17    client, that's factual in nature.

18         MR. SCHMUTZ:  Correct.

19         THE COURT:  All right.  It might not necessarily

20    invade the privilege, but the contents of those

21    conversations it doesn't say that, does it?

22         MR. SCHMUTZ:  I agree, Your Honor, and we're not

23    seeking those.  I concede that we're not entitled to know

24    the communications between attorney/client.

25         THE COURT:  But what is it, I read your document

1    request and it is very broad.  So what is it exactly that

2    you are seeking?

3         MR. SCHMUTZ:  Primarily relationships, Your Honor,

4    because relationships can lead to equitable remedies that

5    can expand the sources from which the judgment can be paid.

6         THE COURT:  So you're looking for information they may

7    have about the company's assets?

8         MR. SCHMUTZ:  Or who controls the company.  We haven't

9    been able to find out who controls these companies.

10   Somebody, some individuals, are standing behind these

11   companies directing unlawful activities and we want to know

12   who they are.

13        THE COURT:  What measures have you taken to find that

14   out short of this?

15        MR. SCHMUTZ:  Um, we have done everything that we

16   could.  Like, for example, we have looked on the records of

17   the State of Utah.  I have asked the court to take judicial

18   notice of.  No individuals are mentioned on any of these

19   companies in the records of the State of Utah.  Iono, which

20   is one of the -- which is one of the defendant entities, is

21   the only member and the only registered agent that's listed.

22   We have also checked Iono is a Delaware entity and we found

23   through our investigation that it -- it's registered agent

24   back there is an entity called, I forget the name of it, but

25   it is an entity in Delaware.  We have contacted that entity.

1    The only information they were able to give us is that their

2    contact in Utah is Blair Jackson.

3        THE COURT:  Um, I ask and I saw in your response that

4    you did not seek any advisory opinion from the Utah State

5    Bar.  And let me ask you why not?

6        MR. SCHMUTZ:  Well, I think that the case law is

7    clear, Your Honor.  I mean Utah has case law on this

8    subject.  I cited the court to the -- just a moment, I'll

9    check it here, to the *Jackson* case and to the *Gold Standard*

10   case.  In the *Gold Standard* case the court says very

11   plainly, for example, an attorney/client agreement is not

12   privileged.  And so clearly information relating to the

13   attorney/client privilege that's factual in nature is not

14   protected by the attorney/client privilege and is subject to

15   discovery.

16       THE COURT:  But you're seeking, by your own admission,

17   information concerning assets, for instance, and that would

18   go past, that's far beyond what these cases, as I understand

19   them, allow.

20       MR. SCHMUTZ:  Uh-huh (affirmative).  Okay and that

21   takes us to the *Lifewise* case which is Judge Boyce's case.

22   And in that case he talked about the -- the extent to which

23   a judgment creditor can seek information from third-parties.

24   And what Judge Boyce says in that case is very instructive

25   for this case.  He says that judgment creditor is entitled

16

1      to discovery, a judgment creditor is entitled to very

2      thorough examination and that includes third-parties.

3             THE COURT:  Was that case -- did it include attorneys?

4             MR. SCHMUTZ:  No, that one did not include attorneys.

5      So to me these are two different questions that the court is

6      raising, both of which I think are important.  One, the

7      extent to which attorneys may protect information; and two,

8      the extent to which judgment creditor can seek information

9      from third-parties.  *Lifewise* talks about the second

10     category.  That is the extent to which a judgment creditor

11     can seek information from third parties.  In that case,

12     Judge Boyce said initially it is very broad standard.  They

13     can seek information from third-parties that may lead them

14     to discover relationships or assets of the judgment debtor.

15     Where there is a little bit higher standard is the question

16     of if we are seeking to discover the assets of the

17     third-party themselves which to a certain extent we are

18     because we have asked for tax returns and bank statements.

19            Now on that level Judge Boyce says that the standard

20     is not that much higher as long as you can show at least

21     some demonstration of a potential alter ego relationship, or

22     if there is a reasonable doubt, or if there is at least some

23     demonstration or colorable suspicion or legitimate

24     questions.  Those are the types of things we have to show.

25     I mean in our view what we have asked the court to take

1    judicial notice of is sufficient to raise questions about

2    those entities whose only registered agent and member is a

3    judgment debtor.  That seems a situation where there might

4    be an alter ego relationship, transferring back and forth of

5    assets, and that meets that low standard as to those

6    entities.

7         Now not all of the entities that we have named fit

8    under that.  And I would concede that with respect to

9    M-Support and the two individuals that we have named in the

10   subpoena we don't rise to that level and so I would concede

11   that we shouldn't get their tax returns or bank statements

12   at this point in time.  But the others we have met the

13   standard set by Judge Boyce.  So that's -- that's that side

14   of it.

15        THE COURT:  Do any of your cases extend to

16   attorney/client relationships?

17        MR. SCHMUTZ:  Yes.  Several of them.  I would cite the

18   court --

19        THE COURT:  Which ones particularly?

20        MR. SCHMUTZ:  Okay.  Some are Utah cases, some are

21   federal cases.  In, um, the *Jackson* case, which is Utah

22   case, it says that "the privilege, the attorney/client

23   privilege, does not extend to documents that involve

24   evidence of objective facts dealing with events, conditions,

25   or circumstances, and not expert conclusions or a lawyer's

1      impressions.  Non-privileged writings," this is *Jackson*

2      also, "do not become privileged merely because they are

3      delivered to an attorney."  So in that category --

4           THE COURT:  Give me the facts of that case.

5           MR. SCHMUTZ:  That was a case -- if I could be excused

6      for a moment.

7           THE COURT:  Sure.

8           MR. SCHMUTZ:  Your Honor, I don't have that one with

9      me.  But -- but just a second.  That was a case where the

10     plaintiff contended that cars in the parking lot were being

11     injured by emissions from Kennecott's smelter.  And so they

12     sought discovery from Kennecott about the testing that had

13     been done on their smelter and the standards that they

14     achieved and how they tried to prevent the emissions.

15     Kennecott refused to respond on the grounds that they had

16     delivered those documents to their attorney and they were

17     privileged by -- they were protected by the attorney/client

18     privilege.  The Supreme Court of Utah said no.  It doesn't

19     matter if they had been delivered to an attorney or if

20     they're being held by an attorney, if by their nature they

21     don't represent confidential communications, they are

22     discoverable.  That's what we're talking about here.  We're

23     looking for things like corporate resolutions, articles of

24     incorporation, um, the kind of things that would identify

25     and phone records that would help us to identify the

1    individuals that are controlling these two entities that we

2    have a judgment against.  And under that *Jackson* case, those

3    records simply are not protected and they shouldn't be in

4    this case either.  Another example is the *Gold Standard* case

5    which is another Utah case.  In that case the Utah Supreme

6    Court held that an attorney/client agreement is not

7    protected since it's not confidential and doesn't contain

8    confidential information.  In the *Walsh* case which is

9    Seventh Circuit 1980, the court said documents showing

10   billing and payment history are not privileged, not

11   protected.

12        THE COURT:  Billing and payment history between a

13   lawyer and a client?

14        MR. SCHMUTZ:  Correct.

15        THE COURT:  All right.  How -- how is that the same as

16   what you're asking?

17        MR. SCHMUTZ:  We're asking for that.

18        THE COURT:  Their billing to their lawyer?

19        MR. SCHMUTZ:  Their billing --

20        THE COURT:  Why is that relevant to your inquiry?

21        MR. SCHMUTZ:  Because we hope it will show us who is

22   controlling these two entities.  We haven't been able to

23   find anyone.  None of the records that we found that are

24   public records show any individuals.  We would like to know

25   who is directing the show, who is pulling the strings.  The

1    only way to do that that we know of is through the

2    attorney/client billing records.  We're not interested in

3    content, we're not trying to find out what they talked

4    about, we're only trying to find out who they talked with.

5              THE COURT:  Go ahead.

6              MR. SCHMUTZ:  Okay.  Um, same thing in the *Freebird*

7    case which is the district -- or the Kansas -- that is the

8    state court Kansas Court of Appeals, narrative statements

9    and billing records, unless they were litigation strategy,

10   are not protected.  The way that the attorney/client

11   privilege works as is outlined in these cases, Your Honor,

12   is simply that it's -- the burden is on the attorney to

13   identify content that reflects confidential communications.

14   But the fact of meetings, who the attorney met with and when

15   and where are not privileged.  And so they are subject to

16   discovery and hopefully they will lead us to discover those

17   individuals who are in control of these companies and who

18   may be able to help us find their assets or income or

19   transfers of property.

20             THE COURT:  Thank you.

21             MR. SCHMUTZ:  You're welcome.

22             MR. WRIGHT:  Rebuttal, Your Honor?  Your Honor, couple

23   of things.  First of all, I think that counsel is

24   misrepresenting these cases as they apply in the situation.

25   Let's talk about *Jackson* in particular.  Um, completely

1       different situation.  In that situation, the parties were

2       seeking to protect information because they had given it to

3       their attorneys.  That is vastly different than trying to

4       get the information from the attorneys.  In other words, the

5       parties were working, their argument was simply hey this is

6       now attorney/client privilege because we gave it to our

7       attorneys, as I understand Mr. Schmutz's argument.  That is

8       not what's happening here.  They are coming to the attorneys

9       asking for the information.  And in that case, clearly the

10      parties had a chance to invoke privilege.  Some of the other

11      cases he has referenced, again, are separate and in those

12      situations there is no question about whether the parties --

13      the attorneys were representing the parties.  That was known

14      and they were seeking for information particularly about

15      that which is not this situation.  It's completely

16      different.  And the court has asked about -- about seeking

17      an opinion letter from the bar.  And again, I think that the

18      most on point, directly on point with this, is essentially

19      is the opinion letter 9702 which addresses that issue which

20      I talked about earlier.  In that case they were seeking

21      information from an attorney and had all the weapons or

22      tools of prosecution that they could have got that

23      information, investigative subpoena, warrants, all of that

24      stuff.  The opinion letter never references it.  It is

25      saying you don't have to give that information attorney.

1     And that is exactly what we're talking about here.

2         And then going to the point of well hey this isn't

3     protected information, we just want to know who the owners

4     and who is running that company is.  That is confidential

5     information.  That can be part of a strategic plan of a

6     business.  That is absolutely confidential.  Now if they can

7     get it somewhere else through public records, whatever, they

8     can get it, but they certainly can't come to the attorney to

9     get that.  They certainly can't come to the attorney and try

10    to get the bylaws, the operating agreement, um, the

11    articles.  If those documents had been prepared by the

12    attorney, and they're seeking to obtain them from the

13    attorney, they are privileged information.

14        Essentially what plaintiff is trying to do he is

15    trying to do a two-step process that would essentially

16    eliminate attorney/client privilege.  First he trying to say

17    because we are trying to get this through legal means 1.6

18    doesn't apply.  So we get around that hurdle.  And now

19    because we have got all these different exceptions that we

20    think that once we're past that hurdle then we can get this

21    information that we want either.  That is not the point.

22    Completely eviscerates the purpose of the attorney/client

23    privilege.

24        THE COURT:  Thank you.  All right.  Um, I'm prepared

25    to rule and I find specifically that the movant here has met

1      its burden of showing that this information, if it exists,

2      is confidential.  I find that the cases cited by plaintiff

3      are distinguishable from the facts of this case and

4      therefore do not specifically apply.  And, um, I also find

5      that the subpoena requests are very overbroad.  I am not

6      convinced about the burdensome issue, um, you know, but I

7      don't think we reach that.  I find that 1.6 does apply and

8      that this is an unwarranted invasion of the attorney/client

9      privilege.

10         So with regard to attorneys fees, um, I think that

11     this could have been resolved through requests for an ethics

12     advisory opinion and that would have minimized the costs of

13     hiring counsel and bringing the matter before the court.  I

14     am not concerned about judicial expediency, but I am

15     concerned about the cost to bring this matter, and I am

16     going to award attorney's fees.  And Mr. Wright, I want you

17     to do several things.  I want you to prepare a proposed

18     order with findings and conclusions consistent with my

19     statements here today, and I also want you to submit an

20     affidavit of costs that I will consider in awarding the

21     fees.

22         Um, Mr. Schmutz, I just think that this is the

23     improper way, and there must be other ways to find out this

24     information without invading the attorney/client privilege.

25     All right?  Okay.  Thank you all very much.  We're in

1     recess.

2              (Whereupon, the hearing concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     REPORTER'S CERTIFICATION

2

3          I hereby certify that the foregoing transcript

4   was taken from a tape recording stenographically to the best

5   of my ability to hear and understand said tape recording,

6   that my said stenographic notes were thereafter transcribed

7   into typewriting at my direction.

8          Dated this 27th day of April, 2016.

9

10

11          _____

12                    Laura W. Robinson

13

14

15

16

17

18

19

20

21

22

23

24

25